Greenwald *v.* Weinberg, Appellant.

Argued May 4, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Percy C. Pachtman,* for appellant.

*Ralph J. McAllister*, and with him *Paul W. Mc-Allister* of *McAllister & McAllister*, for appellee.

OPINION BY LINN, J., July 8, 1931:

This is a suit for contribution brought by one of two joint payees of a promissory note against the other. The note was as follows:

"McKeesport, Pa., May 29, 1927, $1,870 sixty days after date I promise to pay to......the order. of J. B. Greenwald and Louis Weinberg, eighteen hundred seventy and no/100......dollars, at Peoples City Bank, McKeesport, Pa., without defalcation, value received. Joseph Brown."

It was indorsed as follows: "J. B. Greenwald, Louis Weinberg."

The note was the last of a series of renewals. It was not paid at maturity and was duly protested. The notary mailed notice of dishonor to the plaintiff and defendant in separate enclosures but sent both to plaintiff's address; there is evidence that the bank did not have defendant's address, (he did not live in McKeesport), and that the efforts of the notary failed to ascertain where he resided. When plaintiff received the notice, he talked with defendant about paying the note, and defendant replied that he could not pay and that plaintiff might do so. Plaintiff accordingly paid the bank, and brought this suit for reimbursement of one-half of the amount he paid. He averred that he was compelled to pay, and has judgment on his verdict. Defendant has appealed.

The affidavit of defense made no issue (cf Buehler v. Fashion Plate Company, 269 Pa. 428), except that defendant denied receiving notice of dishonor; he contended that without such notice he was discharged from all liability, not only of his liability to the holder

of the note imposed by the negotiable instruments act, but also the liability growing out of his contractual relations with his co-payee. If that defense could be material, it would fail in this case for two reasons; there was evidence that the bank was reasonably diligent in giving notice (section 112 of the Negotiable Instruments Law 1901, P. L. 209); and there was evidence that would justify a finding that defendant received timely notice of dishonor from the plaintiff. The court submitted those questions to the jury. Section 107 provides that: "Where a party receives notice of dishonor, he has, after the receipt of such notice, the same time for giving notice to antecedent parties that the holder has after the dishonor." The order in which joint payees endorse is immaterial, in the absence of agreement otherwise. If the bank, as holder, by omitting to give notice to defendant, discharged him (section 89), that omission would not discharge plaintiff from liability to the bank, because plaintiff was also severally liable for the face of the note (section 68); he could then under section 107, notify the defendant of dishonor; and obviously, even though the bank's omission discharged defendant from liability to it, its conduct would not prevent the plaintiff from enforcing his rights under the negotiable instruments law against defendant who was also severally liable on his indorsement. We have referred to this subject because much was said about it at the trial and in the briefs. But we all agree that it is immaterial in this suit; that plaintiff's right to recover from his co-payee one-half of what he paid to the bank, does not depend on notice of dishonor: cf. Marquardt's Estate, 251 Pa. 73, 78; Friedman v. Maltinsky, 260 Pa. 312, 317; see also Owens v. Greenlee, 68 Colo. 114; 188 Pac. 721; Williams v. Paintsville Nat. Bank, 143 Ky. 781; 137 S. W. 535; Case v. McKinnis, 107 Ore. 223; 213 Pac. 422.

Appellant's liability to plaintiff depends, not on the note or the indorsements under the negotiable instruments law but on his relation with plaintiff as joint payee; they did not intend that liability inter se should depend on the negotiable instruments law. Their joint relation imposed equality of burden; either, compelled by a holder to bear it all, may require contribution of the other. The note is evidence in the suit, but it is not the foundation of the right to recover. "Contribution," in the often quoted phrase of Lord Chief Baron Eyre, "is bottomed and fixed on general principles of justice and does not spring from contract, though contract may qualify it......" (Dering v. Earl of Winchelsea, 1 Cox Ch. 318, 29 Eng. Rep. 1184); the obligation, it is said, arises from "the equitable principle that 'in equali jure, the law requires equality ......' ": Wolmershausen v. Gullick L. R. 1893, 2 Ch. 514, 522. That doctrine has so long been part of the law that persons engaged as co-obligors, in the absence of express understanding otherwise, are held to have dealt with it as an implied term in their relations. It is applied in Pennsylvania, both in equity (Guckenheimer v. Kann, 243 Pa. 75; Malone v. Stewart, 235 Pa. 99) and at law (Friedman v. Maltinsky, supra) As defendant had no defense, judgment against him was inevitable.

Judgment affirmed.